Good morning. May it please the Court, Kristen Thayer on behalf of Appellant Phillip Sanderson. I'd like to reserve two minutes for rebuttal and I'll watch my time and try to do that. At issue in this appeal are four conditions of supervised release with unconstitutionally vague and overbroad language. And these are conditions that are imposed for the rest of Mr. Sanderson's life. This Court just last month in Evans reaffirmed that the Constitution mandates that supervised release conditions be clear for many reasons. And first of which, of course, is to put the defendant on notice as to what is prohibited and what he must do to comply with his supervised release. It's also significant, and another important purpose, though, is to give the probation officer clear notice of what must be done to comply with the conditions so that the probation officer doesn't have unfettered discretion and have a hard time guessing at what the probation officer is allowed, may authorize the defendant to do. And then also, of course, it's important for the courts to have a clear condition, especially here, because there's a lifetime supervision term. So it's likely that Mr. Sanderson will not only have different probation officers supervising him, but should issues arise, there could be different district courts. Roberts. Which ones do you have a problem with? And so I'd like to focus on two conditions today with the Court's permission. First, the employment restriction and the residency restriction, which are significant restrictions on important aspects of his life. Did you say employment? Employment, yes. The occupational restriction, which is Special Condition No. 3, it specifically states that the defendant shall not engage in any occupation, either paid or volunteer, that caters to known persons under the age of 18. And the problem really is the word caters. It's vague. It has a very broad and amorphous meaning, which is demonstrated by the district court's comments at sentencing at the record at page 238. Now, he said that he got, correct me if I'm mistaken, interested in pornography, child pornography, by watching children at a — was it a Walmart store? Is that accurate? He stated that he would sometimes — Well, that was the evidence, wasn't it? Not that he was interested in the pornography because of that. I believe that started a little — it's unclear, the timing with that. But what he said about Walmart is that sometimes he would stay at Walmart longer than necessary to accomplish his goals. Why isn't — against that background, why isn't the condition reasonable since, you know, it's — he gets worse by being around children? Well, Your Honor, the problem is that it's vague because it's unclear — first of all, it's unclear whether caters really would cover a Walmart situation. Walmart offers services from groceries to furniture. So that that business caters to minors, that's how the district court interpreted it, and that's not necessarily how everyone else would interpret it or other courts would. I suppose you could say that McDonald's caters to children because they have McDonald's meals for children, right? And maybe that's what the district court meant. It's unclear. Probably that's what the court meant, maybe the play place. But that would also cover all other fast food. But then what about a grocery store? Right. Anywhere that children could go. Almost anything that sells services or goods is going to have something that appeals to children or is marketed towards children or parents to buy for their children. And what makes this overbroad, if that is the meaning of this word, is that Mr. Sanderson, when he gets out of prison, will be a convicted felon. His employment opportunities will be restricted by that conviction. So what would you have it say so that it would cover what we might think of as true catering to children, but how would you reword it so that it would make sense and, in your view, not be vague? Yes, Your Honor. There's probably many different ways the district court could tailor this. But some examples would be perhaps an occupation that primarily its primary purpose is to cater to children, maybe some limitation on that he not interact with children alone in an occupation, you know, something that makes sure it's public. That's another thing. These are all public, you know, big stores would have other people there. This is not, you know, one-on-one interactions. So if that's what the district court was getting at, there's many different ways the district court could tailor this. And this Court usually remands for that modification if it finds overbreadth. So it's the occupational restriction itself isn't your complaint. In the abstract, it's the defining it. Absolutely, Your Honor. It's the specific language. We don't dispute that the district court has discretion and provided some reasons for giving such a condition. It's just because, especially because this will follow Mr. Sanderson. And your specific problem is that the word caters has broad application and could find him being around children under innocent circumstances. Is that right? Yes, Your Honor. It's both overbroad and vague because of what the district court indicated. The district court interpreted it to mean something that didn't seem apparent. You know, Disney World caters to children. So he can't go to Disney World under these circumstances. Correct. And that might be an appropriate limitation because that is more directly a business that is marketed towards children. Not solely children, but much more children than adults. Of course, maybe he shouldn't go there, but. Boyz R Us, Gymboree. Correct. Chuck E. Cheese. I mean, there's definitely, there's ways to tailor this to make sure that those are the businesses that are covered. Or at least get more notice. I'm sorry? What about the other restrictions? You challenged a lot of the conditions. Yes, Your Honor. Which are the ones that you think are the most significant problems? The employment, as I covered, and the residency restriction, which is another important aspect of his life, of course. This is condition number five, special condition five. And it prohibits Mr. Sanderson from residing in a location that has a direct view of places such as schools, yards, et cetera. And I thought the government narrowed that to some degree, correct? Somewhat. I think really the ZARA case, the unpublished ZARA case, is instructive that there at least needs to be some narrowing of this condition to not only make sure that it's direct view of truly only places that are primarily used by children, not, you know, a pool that's used just by adults, or primarily, which is what the ZARA case said. But also to clarify that direct view, what does that mean? That's the vague part, that is it his window in direct view? Is it where he enters his apartment? Likely he'll have to rent, and, you know, if you're in an apartment building, it's a huge building. What part of the building has to be in direct view? It might be just the window, but that would be something for the district court to clarify, especially because this is where he lives, you know. I mean, there could be places that pop up that are primarily used by children, and he might have to move around a lot. And so that's something that requires more specification because of the intrusion into his ability, you know, where he lives. We've had these direct view cases before. Do you want it narrowed? I'm trying to understand. One possible solution would be to make sure that it's or to clarify with the district court that it's the direct view of his windows. Is it his apartment or his actual residence, or is it the building? Because right now it says location. So I guess location is the problem, too. Location is not clear if it's a multiunit building. As opposed to housing. What was your take on the government's proposal? For the residency? The narrowing, yes. I think that following ZARA, which is basically what the government is suggesting, would help limit it, but that we'd also ask. ZARA didn't address the direct view and location components. It just addressed the places that had to be in direct view. So we'd ask that both be modified, or at least we have the chance to discuss that with the district court again under the ZARA case. Well, let me just ask you this in terms of location. So he lives on the first floor, or the basement, so he can't see anything. Yes. But it's one of these apartment buildings, like many of them have a rooftop. Right. So your suggestion wouldn't actually work that well, because you could be on the rooftop, can't see anything from my basement apartment, and it's not a question of what I see from the corridor, but what do I see from upstairs. So what is your solution to that situation? Well, we'd argue that the most reasonably tailored solution would be where he lives, his actual residence, where he can see when he's spending time in his unit or house, or whatever it may be. But you see the problem I'm posing. It could be overbroad in that situation that if he goes on a rooftop. Why could it be overbroad? Because that's a very common situation in multi-story buildings these days, and that would be quite a view. Yes. I would still submit that's not – the district court didn't give reasons why – I guess I would presume he'd be spending lots of time on the roof and not in his own building or in his own unit. So I'm just – I would argue that that would still be overbroad. You may want to stay here for the remaining time. Thank you. Go ahead. Just one final question. The restriction relates to not having a view of children. It's having a view of specific places where children congregated like a playground. Yes. Right? And you find fault with that? Well, it actually is broader than that because it says schoolyards, parks, public swimming schools, recreational centers, et cetera. Those recreational centers, not necessarily a minor, primarily children place. So that was part of why the Court sent back the condition in ZARA, so that would need to be corrected, too. Thank you, Your Honor. May it please the Court. Peter Levitt for the United States. This case involves many undisputed and frankly frightening facts, facts that come directly from the defendant's statements. He told Agent Hearn that he has a thing for toddlers age 0 to 3. He said he would go to Walmart to do an errand and then he would loiter and look at the little children. He said he deserved it. And then he would go back to his child pornography collection and excerpts of record, page 899, he would masturbate. He admitted that he can't be trusted to work with children. The District Court said by choice he's tried not to work with kids. It would be like laying drugs on a table. It would be too easy. He himself said, if I work with them, they look up to me. They rely on me. It would be too easy, excerpts of record 914. Where can he work? He was a tax preparer, Your Honor. Okay. He can continue being a tax preparer. Children aren't involved in that. I guess the question that's raised, though, is what does cater mean? Cater means to supply what is required. And to say rather He can't go to places. He can't work in places where they cater to children under 18. Correct. Does a grocery store cater to children under 18? I think, yes, in this case, viewing the operative term caters through the prism of this defendant. But it's not really just the prism of this defendant. It's the interpretation of what does cater mean? And my question is, is it any establishment that children go to? Or does it have to be an establishment where a special affinity exists between children and the establishment? Again, I'm not disputing all what you said at first. I'm just trying to figure out when he's out here on supervised release and he's looking at what occupation can I do or not do, how do you link the cater between the location and the child? Well, we link it this way. Cater vis-a-vis the occupation restriction says he can't work at Walmart. Now, he can go to Walmart, pick up something for his car, go and check out. He can't loiter. He can go there, pick it, but he can't work there. We can't — if we interpret this so narrowly as to say, okay, you can't work at Chuckie Cheese or McDonald's. You can work anywhere else, that does not — that hamstrings the district court trying to do its duty under 3583D1, protecting the public. This guy has triggers everywhere by his own admission. He said, I can't live, quote, I live too damn close to the elementary school. I mean, those are easy. Those are easy answers. Yes. He can't work in any kind of childcare-related, youth-related, school-related, maybe church or synagogue-related, but it's these public locations that children may go to. How do you determine if something caters to children? Would a furniture store that sells children's bedroom furniture, does that cater to children, for example? I would argue, yes, it does, Your Honor. I would say working as a tax preparer does not cater to children. Before he was a tax preparer, he worked in some sort of research laboratory at a university working with disturbed adults. That does not cater with children, cater to children. Faced with the factual record in this particular case, the district court had to, to discharge its duty of protecting the public and protecting the community, fashion broad, not overbroad, broad conditions of supervised release. Is he in custody now? Pardon me? Is he in custody now? Yes, Your Honor. Will be released when? I cannot recall. I know he got 60 months, so I'd imagine about four more years. Yes. How old is he now? In his mid-20s. It's quite possible that he will get out and meet somebody and have children? I don't know how to assess the likelihood of a relationship working out. You never know in four years, but he may. He may. And these restrictions would apply to his own children? No, they would not, Your Honor. Now, how would he know that he can come close to his children without being in violation of these supervision provisions? Well, we know from this Court's opinion in Appadacka. Now I know that. I'm glad you mentioned it. It was a different situation. Yes. But he can't go by case law. I mean, he has to comply with this document, and this document seems to put him in violation if he comes around his own children. I know it's hypothetical, but it can happen. And what does he do? I think several things, Your Honor. First of all, Appadacka is the law of the circuit. Whether or not he knows it, he seems to be a fairly bright person. He could call his probation officer, say, I met somebody, we're thinking of having kids, does this stop me from being with my kids? And the probation officer, of course, is going to say, no, it doesn't. He went and he could move to modify. You took the words right out of my mouth. That's another reasonable possibility. But there's no — and I spoke to our trial attorney who worked on this, and when these things come up at sentencing, the government's not going to oppose a father being with his own child. It simply doesn't play out in that manner. The next restriction is the — that defense counsel focused on is the residency restriction, supervised condition, special condition number 5. And in that case, in our case, the frequented by minors under 18 is a phrase that modifies all of the foregoing places. And obviously here, the term is not meant — the restriction is not meant to preclude him from living in an apartment building a mile from a children's park. It's not to keep — So you would be willing to make that clear under Zara to have that interlineated by the district court? Yes, Your Honor. And that would solve that, at least that aspect of the issue? Yes, it would, Your Honor. Okay. If the court has any further questions, I'd be happy to answer them. I think not. Or did you have another question? Don't let him off the hook so easy. No, I don't. We're friendly here in the night. No, thank you. Thank you, Your Honor. Could you put a minute? Yes, please. Thank you. Thank you, Your Honor. I'd just like to make one point on rebuttal. And to address Judge Fuente's questions about the infringement on his right to have a family. First, modification cannot — a defendant cannot move for a modification of his supervised release conditions for an illegality. So Sanderson would only be able to ask that under his personal history and characteristics they've changed, and the district court would have discretion. You mean he would be stuck with this provision? He could be, because he can't raise it as a constitutional challenge, which is what gets that strict scrutiny to ensure that the familiar rights are protected. So that's not really a solution for him. So how would you remedy that? We'd remedy it by asking for the court to send it back for modification to ensure that — specifically to modify the portion that the probation officer has to consent to this, to an association with his own children, and that there must be another responsible adult present, because there's nothing that shows that those were necessary conditions. Should he have children? Should he have children, yes, Your Honor. Natural children? Yes. Thank you. Thank you. The case of United States v. Sanderson is submitted. Thank you both for coming over from Las Vegas today.
judges: Fuentes, Fernandez, McKeown